**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SHAWN B.,**

               **Plaintiff,**

               v.

**COMMISSIONER OF SOCIAL SECURITY,**

               **Defendant.**
_____

**1:18-cv-1371
(GLS)**

**APPEARANCES:**

**FOR THE PLAINTIFF:**
Office of Stephen J. Mastaitis
150 Franklin Beach Road
Saratoga Springs, NY 12866

**FOR THE DEFENDANT:**
HON. GRANT C. JACQUITH
United States Attorney
100 South Clinton Street
Syracuse, NY 13261

Ellen E. Sovern
Regional Chief Counsel
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**OF COUNSEL:**

STEPHEN J. MASTAITIS, JR.,
ESQ.

EMILY M. FISHMAN
Special Assistant U.S. Attorney

**Gary L. Sharpe
Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Shawn B. challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Shawn's arguments, the Commissioner's decision is affirmed.

### II. Background

On May 12, 2016, Shawn filed an application for DIB and SSI under the Social Security Act ("the Act"), alleging a disability beginning August 28, 2014. (Tr.[1] at 140-41, 237-49.) After his applications were denied, (*id.* at 168-75), Shawn requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 176), which was held on November 15, 2017, (*id.* at 27-69). On December 21, 2017, the ALJ issued an unfavorable decision, finding Shawn not disabled and denying the requested relief, (*id.*

---

[1] Page references preceded by "Tr." are to the administrative transcript. (Dkt. No. 8.)

at 7-26), which became the Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 1-6).

Shawn commenced this action by filing his complaint on November 27, 2018, wherein he sought review of the Commissioner's determination. (Compl.) Thereafter, the Commissioner filed a certified copy of the administrative transcript. (Dkt. No. 8.) Each party filed a brief seeking judgment on the pleadings. (Dkt. Nos. 11, 12.)

### III. Contentions

Shawn contends that: (1) the ALJ failed to find Shawn's impairments meet or medically equal the severity of a listing in Appendix 1 to 20 C.F.R. Pt. 404, Subpt. P; (2) the residual functional capacity (RFC) is not supported by substantial evidence; (3) the ALJ failed to properly follow the treating physician rule; (4) the ALJ improperly evaluated Shawn's credibility; and (5) the Appeals Council's denial of review and refusal to remand, based on the new evidence Shawn submitted, is error. (Dkt. No. 11 at 6-16.) The Commissioner counters that the ALJ's findings are free from legal error and are supported by substantial evidence.[2] (Dkt. No. 12

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to

at 6-25.)

## IV. **Facts**

The court adopts the parties' factual recitations to the extent they are consistent with the statement of facts contained in the ALJ's decision and supported by the medical record. (Tr. at 12-22; Dkt. No. 11 at 2-6; Dkt. No. 12 at 2.)

## V. **Standard of Review**

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-*3 (N.D.N.Y.

---

support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citations omitted).

[3] The § 405(g) standard of review in DIB proceedings brought under Title II of the Act also applies to SSI proceedings under Title XVI of the Act. *See* 42 U.S.C. § 1383(c)(3). Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to DIB claims under Title II. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Accordingly, although the regulatory sections cited herein are sections of Title II, the substance is found in both Title II and Title XVI.

4

Mar. 19, 2008).

## VI. Discussion

### A. Listings 12.04 & 12.06

First, Shawn contends that the ALJ erred by failing to find that his post-traumatic stress disorder (PTSD) and depression met the criteria of listing 12.04 for depressive, bipolar and related disorders, or of listing 12.06 for anxiety and obsessive-compulsive disorders, and that such a finding is not supported by substantial credible evidence. (Dkt. No. 11 at 6-12.) The Commissioner counters that Shawn has failed to prove he has an impairment that meets or equals the requirements of the listings, and that the ALJ's finding is supported by substantial evidence. (Dkt. No. 12 at 6-15.)

At step three of the disability evaluation, the ALJ is required to determine whether the claimant's impairments meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1. *See* 20 C.F.R. § 404.1520(d). To qualify, the claimant's impairments must satisfy all of the medical criteria of the particular listing. *See id.* § 404.1525(c)(3). If the claimant's impairments meet a particular listing, such impairment is "severe enough to prevent an individual from doing any gainful activity." *Id.*

§ 404.1525(a). To establish disability under listings 12.04 and 12.06, a claimant must prove, among other things, that she suffers from at least two of the following: (1) marked limitation in understanding, remembering, or applying information; (2) marked limitation in interacting with others; (3) marked limitation in concentrating, persisting, or maintaining pace; or (4) marked limitation in adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B).

The ALJ found that Shawn has mild restrictions in understanding, remembering, or applying information; moderate limitations in interacting with others; mild limitations in the area of concentrating, persisting, or maintaining pace; and mild limitations in his ability to adapt or manage himself. (Tr. at 14-16.) In making his determination, the ALJ relied on the findings and opinion of psychologist Dr. Sara Long, who performed a consultative psychiatric evaluation of Shawn on June 29, 2016, and on the opinion of state agency psychological consultant Dr. C. Walker, who reviewed Shawn's medical file on August 4, 2016. (*Id.*)

In the area of understanding, remembering, or applying information, Dr. Long observed that Shawn has no limitations regarding his ability to follow and understand "simple directions and perform[] simple tasks," and

6

his intellectual functioning is "average."  (*Id.* at 775.)  She further assessed that he is "able to learn new tasks, perform complex tasks, and make appropriate decisions."  (*Id.*)  Similarly, Dr. Walker opined that Shawn is "[m]oderately limited" in the area of understanding and remembering detailed instructions, and "[n]ot significantly limited" in the areas of remembering work-like procedures and locations, understanding and remembering "very short and simple instructions," and making simple work-related judgments."  (*Id.* at 149-50.)  Additionally, Shawn's own reported activities indicate that he is able to follow spoken and written instructions.  (*Id.* at 284.)  For these reasons, the ALJ determined that Shawn has mild restrictions in understanding, remembering, or applying information.  (*Id.* at 14-15.)

With respect to the functional area of interacting with others, Dr. Long opined that during Shawn's examination, he was "cooperative," had "good social skills," and "made appropriate eye contact."  (*Id.* at 774.)  She also assessed that Shawn is able to "relate adequately with others," and he reported that his family relationships are good.  (*Id.* at 775.)  Similarly, Dr. Walker opined that Shawn is "[m]oderately limited" in interacting with the general public, and is "[n]ot significantly limited" in maintaining "socially

7

appropriate behavior." (*Id.* at 150.) Dr. Walker also assessed that Shawn is not significantly limited in his ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (*Id.*) For these reasons, the ALJ determined that Shawn has moderate restrictions in interacting with others. (*Id.* at 15.)

In the area of concentrating, persisting, or maintaining pace, Dr. Long assessed that Shawn is "able to maintain attention and concentration and is able to maintain a regular schedule." (*Id.* at 775.) According to Dr. Long, Shawn is also capable of "learn[ing] new tasks and perform[ing] complex tasks," and "appears to be functioning on an average intellectual level with a good fund of information." (*Id.*) Similarly, Dr. Walker opined that Shawn is "[m]oderately limited" in his ability to maintain attention and concentration for an extended amount of time, and is "[n]ot significantly limited" in his "ability to sustain an ordinary routine without special supervision." (*Id.* at 15, 149.) For these reasons, the ALJ determined that Shawn has mild limitations in the area of concentrating, persisting, or maintaining pace. (*Id.* at 15-16.)

Lastly, in the area of adapting or managing oneself, Dr. Long found that Shawn is able to adequately manage stress. (*Id.* at 775.) During his

8

examination, Dr. Long observed that Shawn was "neat and well groomed," and Shawn reported that he takes care of his own grooming, cooks, cleans, and does laundry. (*Id.* at 16, 774-75.) Similarly, Dr. Walker assessed that Shawn is "[m]oderately limited" in his ability to appropriately respond to changes in his work setting, and he is "[n]ot significantly limited" in his "ability to be aware of normal hazards and appropriately take precautions." (*Id.* at 150.) For these reasons, the ALJ determined that Shawn has mild difficulties in adapting or managing onself. (*Id.* at 16.)

In light of the foregoing, the ALJ's determination that the severity of Shawn's impairments do not rise to the level of "marked" in any of the "B criteria" or "C criteria" functional areas, was appropriately analyzed and supported by substantial evidence in the record. Thus, the ALJ's determination that the severity of Shawn's impairments does not meet listings 12.04 or 12.06 is free from legal error.

**B.     RFC Determination**

Shawn argues that substantial evidence does not support the ALJ's determination that he has the RFC to perform a full range of light work. (Dkt. No. 11 at 16.) Specifically, Shawn contends that is he "unable to consistently meet the mental, and, particularly, social demands of a

competitive work schedule and work environment." (*Id.*)

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

*1.   The ALJ's Consideration of Shawn's Subjective Complaints*

Shawn argues that the ALJ failed to fully credit his testimony, and failed to provide reasons for rejecting it. (Dkt. No. 11 at 12.) The Commissioner counters, and the court agrees, that this assertion is without merit. (Dkt. No. 12 at 20-25.)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by

10

the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96–7p, 1996 WL 374186, at *4 (July 2, 1996).

Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, Shawn testified that he is unable to work because he experiences stress and high anxiety around people. (Tr. at 37-38.) Shawn explained that he experiences this stress and anxiety mainly when he is around people that he does not know, but feels more at ease when there is security around. (*Id.*)

The ALJ expressly took these subjective complaints into account and

found that Shawn's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Shawn's subjective statements "concerning the intensity, persistence, and limiting effects of his symptoms [were] not fully consistent with the evidence" in the record. (*Id.* at 18.) Specifically, the ALJ considered the objective medical evidence since the alleged onset date, the opinions from Dr. Long, Dr. Joseph Prezio, and Dr. Walker, as well as the medical evidence from Shawn's time at the Albany Veterans Affairs (VA) hospital, and the Bath VA domiciliary, all of which contain substantial evidence supporting the ALJ's finding that Shawn is able to perform work at all exertional levels, limited by the following nonexertional limitations: Shawn "can occasionally interact with supervisors," and he "can have minimal, meaning brief and superficial, interaction with coworkers and the public." (*Id.* at 16-20.)

Ultimately, the ALJ explicitly acknowledged consideration of 20 C.F.R. § 404.1529 when making his credibility determination, (*id.* at 20), and it is evident from his thorough discussion that the determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and the applicable Social Security Rulings as evidence that the ALJ used the proper legal standard

12

in assessing the claimant's credibility); *see also Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that [she] considered the entire evidentiary record." (internal quotation marks, alterations, and citation omitted)); *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding" (citation omitted)).

Accordingly, the ALJ did not err in evaluating Shawn's subjective complaints.

  2. *The Treating Physician Rule*

Next, Shawn contends that the ALJ erred in applying the treating physician rule because he failed to give controlling weight to his treating psychiatrist's opinion. (Dkt. No. 11 at 12-16.) The Commissioner disagrees and submits that the ALJ properly evaluated the medical opinion evidence. (Dkt. No. 12 at 20-25.)

13

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id.*

14

at 407 (citation omitted).

Here, the ALJ had before him the opinions of Dr. Long and Dr. Walker in making his determination. (Tr. at 20.) As discussed above, Dr. Long opined that Shawn has no limitations regarding his "ability to follow[] and understand[] simple directions and perform[] simple tasks," and he can "maintain attention and concentrat[e], . . . learn new tasks, perform complex tasks, make appropriate decisions, . . . maintain a regular schedule," and adequately relate with others and manage stress. (*Id.* at 775.) The ALJ noted that, even though Dr. Long only consultatively examined Shawn once, because her findings are supported by her clinical observations and are consistent with the medical evidence, "great weight" was given to her opinion.[4] (*Id.* at 20.)

Similarly, after reviewing Shawn's file, Dr. Walker assessed that Shawn is "able to understand and remember instructions and sustain attention and concentration for tasks, . . . handle brief and superficial

---

[4] The ALJ gave little weight to Dr. Long's assessment that her findings "appear consistent with substance abuse problems, which may interfere with his ability to function on a regular basis," (Tr. at 20, 775), noting that such a statement is "overly vague" and "inconsistent" with Dr. Long's finding that Shawn is able to "perform various basic work activities," (*id.* at 20.)

15

contact [with coworkers and the public], . . . [and] handle ordinary levels of supervision in the customary work setting." (*Id.* at 151.) "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining [s]tate agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) (citations omitted).[5]

Shawn asserts that the ALJ discounted "over 12 months of treatment by Dr. Abrams in favor of a very brief, one-time exam by [Dr. Long]." (Dkt. No. 11 at 13.) Although it is unclear what twelve month period Shawn is referring to, the ALJ detailed Dr. Abrams' assessment of Shawn from 2015 through 2016, (Tr. at 19), and, contrary to Shawn's assertion that the ALJ "ignore[d] an/d or cherry pick[ed] this assessment," (Dkt. No. 11 at 14), Dr. Abrams' findings are generally consistent with those of Dr. Long and Dr. Walker. For example, Dr. Abrams observed that Shawn's mood was "good," he was "[n]eatly groomed" and "healthy appearing," and he was

---

[5] Shawn also argues that there is no indication that Dr. Walker relied on anything "whatsoever," and that "who . . . and what, if any, professional qualifications" Dr. Walker has is not reflected in the record, and therefore his opinion "is entitled to no more credibility, or respect, then [sic] that of a drive by shooter." (Dkt. No. 11 at 6.) However, as noted by the Commissioner, (Dkt. No. 12 at 8), Dr. Walker's qualifications and the evidence he reviewed are reflected in the record. (Tr. at 140, 143-45.)

"[no]t getting overwhelmed." (Tr. at 424, 667.) During another examination with Dr. Abrams, he exhibited "[n]o hopeless feelings" and was "future focused." (*Id.* at 533.)

Further, to the extent Shawn argues that the ALJ should have afforded more weight to his VA records, (Dkt. No. 11 at 12-16), these VA records reflect improvements made by Shawn as well as normal mental status examinations. (Tr. at 418, 429, 476, 483, 502-03, 504, 505-06, 528-29, 532-33, 560-61, 565.) In any event, "whether there is substantial evidence supporting [Shawn's] view is not the question here; rather, [the court] must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). As such, the ALJ did not commit legal error.

### 3. New Evidence Introduced to Appeals Council

Finally, Shawn submits that the Appeals Council's denial of review and refusal to remand, based on the new evidence he submitted, is error. (Dkt. No. 11 at 9, 13.) The Commissioner disagrees and maintains that, even if this evidence was considered, it would not have changed the outcome of the ALJ's decision, because the ALJ's decision is supported by substantial evidence. (Dkt. No. 12 at 16.)

17

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ] hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see Perez*, 77 F.3d at 45. The Appeals Council will review the case if it finds that the ALJ's "action, findings or conclusions . . . are not supported by substantial evidence." *Id.* § 404.970(a)(3). If "the Appeals Council denies review after considering new evidence, the [Commissioner's] final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez*, 77 F.3d at 45 (internal quotation marks and citation omitted). Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. *Id.* at 45.

Here, after the ALJ rendered his decision, Shawn submitted additional medical evidence to the Appeals Council. (Tr. at 78-125.) This evidence included a VA compensation and pension examination note from June 2016, (*id.* at 78-93, 109-25), as well as a mental RFC form questionnaire and a psychiatric review technique form, both completed by Dr. Abrams in January 2018, (*id.* at 94-108). In denying review of the

ALJ's decision, the Appeals Council explained: "[Shawn] submitted mental [RFC] form with attached treatment notes, dated September 15, 2010 through January 18, 2018 (48 pages) and medical records from Veteran Affairs dated February 8, 2010 and June 23, 2016 (17 pages) [which] does not show a reasonable probability that it would change the outcome of the decision." (*Id.* at 2.)

The Commissioner maintains that, even taking this evidence into consideration, substantial evidence supports the ALJ's decision. (Dkt. No. 12 at 16.) The court agrees. For example, when completing Shawn's mental RFC form, Dr. Abrams was unable to "quantify" the percentage of Shawn's limitations, and answered "don't know" to some of the questions. (Tr. at 94).[6] However, to the extent that Dr. Abrams did fill out the questionnaire with substantive comments, certain limitations noted were already considered, and accounted for, by the ALJ. (*Id.* at 14-20.) The same is true with respect to the VA compensation and pension examination note, where, for example, it was noted that Shawn's anxiety

---

[6] Similarly, when completing Shawn's psychiatric review technique form, Dr. Abrams declined to estimate/quantify the degree of Shawn's limitations as to the paragraph "B" and "C" criteria of the listings. (Tr. at 105-06.)

19

around groups of people could limit his ability to work. (*Id.* at 89.) This has been accounted for by the ALJ's discussion regarding nonexertional limitations. (*Id.* at 16-20.) Notably, Shawn "fails to demonstrate that this newly submitted evidence would alter the weight of the evidence before the ALJ so dramatically as to require the [Appeals Council] to take the case." *Kirah v. Berryhill*, No. 3:18-CV-0110, 2019 WL 587459, at *5 (internal quotation marks and citation omitted). Accordingly, the ALJ did not commit legal error.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Commissioner's decision is **AFFIRMED** and Shawn's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 20, 2020
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge